UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

STEFANO SPIGNO,

        Plaintiff,                Case Number 14-10076
                                              Honorable David M. Lawson

v.

PRECISION PIPELINE, LLC,

        Defendant.
_____/

## OPINION AND ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

In this case, plaintiff Stefano Spigno has sued the driver of a truck and his employer for damages caused by a rear-end motor vehicle collision. Spigno alleges that at the time of the accident, the driver, Alan Gansch, was doing his employer's bidding, and therefore the employer, Precision Pipeline, LLC, is liable under the theory of *respondeat superior*. Before the Court is Precision's motion for summary judgment, in which it argues that the undisputed facts show that Gansch was not on the job when the accident occurred. Precision contends, therefore, that it is entitled to judgment as a matter of law on the *respondeat superior* claim. (Spigno also has a claim under the Michigan Owner's Liability statute, Mich. Comp. Laws § 257.401(1).) The Court heard oral argument on February 2, 2015 and now concludes that fact questions prevent the resolution of the claim on summary judgment. Therefore, the motion will be denied.

I.

The accident occurred on December 14, 2012. Gansch was driving a large Peterbilt truck eastbound on Highland Road near Eager Road in Oceola Township, Michigan. Spigno was driving in the same direction in front of Gansch's truck. Gansch rear-ended Spigno's car, causing him to

spin out and cross the center line into the path of an oncoming westbound car driven by Ann E. Blaauw. Spigno and Blaauw suffered serious injuries in the resulting collision, and both subsequently sued Gansch and Precision for negligence. Blaauw settled her claims against all of the defendants, and her case was dismissed. Spigno reached a settlement with Gansch only, and on December 4, 2014, the claims in this case against Gansch individually were dismissed without prejudice, upon the stipulation of the parties.

When not working out of state, Gansch resides in Pittsville, Wisconsin. He is a diesel engine mechanic by trade, and he was hired by defendant Precision to work in that capacity. At the time of the accident on December 14, 2012, Precision was his only employer. From August 2011 through October 2012, Gansch worked for Precision at a job site in Waynesburg, Pennsylvania. In early November, Gansch was reassigned to work at several Precision job sites in Michigan. While he was working in Michigan, he lived temporarily at the Waldenwoods Campground in Oceola Township. According to the daily time records of November 5, 2012 through December 14, 2012, Gansch worked every day except the Sunday after Thanksgiving, seven days a week, an average of 13 hours per day (approximately 90 hours per week). He testified that he was "on call" at all hours and had to be ready any time that Precision might call for him to take his truck out and do repairs at a job site.

Gansch was paid an hourly wage of $30.18 for his labor, plus $16 per hour "rig pay" or rent for the use of the truck that he owned and brought with him to the job in Michigan. The truck was large enough that Gansch needed a commercial driver license (CDL) to drive it. During the time he worked for Precision in Michigan, the truck was not used for work purposes by or for any employer other than Precision. Also during that time, Precision paid for fuel Gansch used while

driving the truck, as well as regular maintenance including oil changes and replacing broken parts like burned out lights. If parts such as brake linings wore out in the course of the assignment, Precision would pay for replacements, unless the item was a major component such as an engine or transmission.

On the day of the accident, Gansch started work at around 6:00 a.m., and he worked 13 hours. That morning, Gansch clocked in by reporting in person to his supervisor, Mike Wall, at the Whitmore Lake jobsite, as he was required to each day. According to the police report, the accident occurred at 5:46 p.m. Along with his own tools and equipment, Gansch also had certain items that belonged to Precision on the truck at the time of the crash, such as "[m]iscellaneous parts . . . angle irons, strap iron . . . some disc blades . . . and a hose." Gansch testified that he was driving in the direction of the Waldenwoods Campground on Eager Road, in Oceola Township, Michigan, when the accident happened. But he could not recall whether he had any other scheduled stops for work assignments after leaving his last job site prior to the accident, which also was located on Eager Road. Gansch stated, however, that "Walden would be [his destination] eventually." Gansch's supervisor also testified that he did not know if Gansch had any scheduled stops between leaving the Eager Road job site and heading home.

The plaintiff filed his complaint on January 8, 2014, and an amended complaint on November 11, 2014. Spigno alleged in his original complaint that Precision Pipeline was liable for the injuries caused by Gansch's driving because at the time of the accident he was an employee of Precision acting within the scope of his employment. In the amended complaint, Spigno further alleged that because Precision Pipeline had rented, or had exclusive use of, for a period of more than 30 days, the truck driven by defendant Gansch at the time of the accident, Precision Pipeline would

be deemed an "owner" of the truck under Michigan law and therefore liable for Gansch's negligence. That theory of liability is not before the Court in the present motion.

II.

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). As the Sixth Circuit has explained, when a summary judgment motion is filed, "[t]he court must view the evidence and draw all reasonable inferences in favor of the non-moving party, and determine 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Alexander v. CareSource*, 576 F.3d 551, 557-58 (6th Cir. 2009) (*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)).

"The party bringing the summary judgment motion has the initial burden of informing the district court of the basis for its motion and identifying portions of the record that demonstrate the absence of a genuine dispute over material facts." 576 F.3d at 558 (citing *Mt. Lebanon Personal Care Home, Inc. v. Hoover Universal, Inc.*, 276 F.3d 845, 848 (6th Cir. 2002)). "Once that occurs, the party opposing the motion then may not 'rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact' but must make an affirmative showing with proper evidence in order to defeat the motion." *Id.* (quoting *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989)).

"[T]he party opposing the summary judgment motion must do more than simply show that there is some 'metaphysical doubt as to the material facts.'" *Highland Capital, Inc. v. Franklin Nat'l Bank*, 350 F.3d 558, 564 (6th Cir. 2003) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio*

*Corp.*, 475 U.S. 574, 586 (1986)) (internal quotation marks omitted). Instead, the responding party must designate specific facts in affidavits, depositions, or other factual material showing "evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252. If the non-moving party, after sufficient opportunity for discovery, is unable to meet his or her burden of proof, summary judgment is clearly proper. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). "Thus, the mere existence of a scintilla of evidence in support of the [opposing party]'s position will be insufficient; there must be evidence on which the jury could reasonably find for the [opposing party]." 350 F.3d at 546 (quoting 477 U.S. at 252) (quotations omitted).

Irrelevant or unnecessary factual disputes do not create genuine issues of material fact. *St. Francis Health Care Centre v. Shalala*, 205 F.3d 937, 943 (6th Cir. 2000). A fact is "material" if its resolution affects the outcome of the lawsuit. *Lenning v. Commercial Union Ins. Co.*, 260 F.3d 574, 581 (6th Cir. 2001). "Materiality" is determined by the substantive law claim. *Boyd v. Baeppler*, 215 F.3d 594, 599 (6th Cir. 2000). An issue is "genuine" if a "reasonable jury could return a verdict for the nonmoving party." *Henson v. Nat'l Aeronautics & Space Admin.*, 14 F.3d 1143, 1148 (6th Cir. 1994) (quoting 477 U.S. at 248).

In a defensive motion for summary judgment, the party who bears the burden of proof must present a jury question as to each element of the claim. *Davis v. McCourt*, 226 F.3d 506, 511 (6th Cir. 2000). Failure to prove an essential element of a claim renders all other facts immaterial for summary judgment purposes. *Elvis Presley Enters., Inc. v. Elvisly Yours, Inc.*, 936 F.2d 889, 895 (6th Cir. 1991).

Precision concedes that there is a genuine issue of material fact on whether there was an employer-employee relationship between Precision and Gansch during the time he worked in

Michigan. Precision contends, however, that there can be no question that Gansch was on his way home when the accident occurred, and therefore he was not acting within the course and scope of his employment at that time. Citing *Bush v. Parmenter, Forsythe, Rude & Dethmers*, 413 Mich. 444, 320 N.W.2d 858 (1982), Precision insists therefore that it cannot be liable for Spigno's damages.

Precision relies primarily on a statement given to police by Gansch indicating that he had "just finished work" and Gansch's deposition testimony that he was on his way home, contending that this testimony leaves no room for dispute about Gansch's destination. Precision also cites testimony by Gansch's supervisor suggesting that Gansch was not "on call" and that he must not have had any more stops after he left his last job site, because otherwise Wall would have spoken with him by phone about where he was going next.

Precision believes strong parallels can be found with *Bowman v. R.L. Coolsaet*, 477 Mich. 976, 725 N.W.2d 55 (2006), in which the court held that an employee working under similar circumstances was not entitled to workers compensation for injuries he suffered in an accident that occurred while he was driving his truck home to his temporary residence after his job site was forced to close by heavy rains. Like Gansch, Bowman also was paid for the use of his truck for work, and like Gansch he also was living at a temporary residence near his Michigan job site.

On the law, Precision is mostly correct. Under Michigan law, "[a]n employer is generally liable for the torts its employees commit within the scope of their employment." *Hamed v. Wayne Cnty.*, 490 Mich. 1, 10-11, 803 N.W.2d 237, 244 (2011). "It follows that 'an employer is not liable for the torts . . . committed by an employee when those torts are beyond the scope of the employer's business.'" *Id.* at 11 (quoting *Zsigo v. Hurley Med. Ctr.*, 475 Mich. 215, 221, 716 N.W.2d 220, 223

(2006)). The Michigan Supreme Court has "defined 'within the scope of employment' to mean 'engaged in the service of his master, or while about his master's business.'" *Ibid.* (quoting *Barnes v. Mitchell*, 341 Mich. 7, 13, 67 N.W.2d 208, 210 (1954)) (quotations marks omitted). "Although an act may be contrary to an employer's instructions, liability will nonetheless attach if the employee accomplished the act in furtherance, or the interest, of the employer's business." *Ibid.*

But "[i]ndependent action, intended solely to further the employee's individual interests, cannot be fairly characterized as falling within the scope of employment." *Ibid.* "While the issue of whether the employee was acting within the scope of his employment is generally for the trier of fact, the issue may be decided as a matter of law where it is clear that the employee was acting to accomplish some purpose of his own." *Bryant v. Brannen*, 180 Mich. App. 87, 98, 446 N.W.2d 847, 853 (1989). Precision contends that this is such a case, because, "[g]enerally, an employee is not acting within the scope of his or her employment when traveling to and from work." *Daniels v. Petrosky-Clark*, 488 Mich. 864, 788 N.W.2d 411, 412 (2010) (citing *Thomas v. Certified Refrigeration, Inc.*, 392 Mich. 623, 631 n.3, 221 N.W.2d 378, 382 (1974)).

Although Precision correctly recites the general rule that an employer is not liable for the negligent driving of an employee going to or from work, it fails to address — or even mention in its brief — the six exceptions to that general rule, five of which could apply in the circumstances of this case. As the Michigan Supreme Court observed, the general "rule is riddled with exceptions including situations where (1) the employee is on a special mission for the employer; (2) the employer derived a special benefit from the employee's activity at the time of the injury; (3) the employer paid for or furnished employee transportation as a part of the contract of employment; (4) the travel comprised a dual purpose combining the employment-required business needs with the

-7-

personal activity of the employee; (5) the employment subjected the employee to 'excessive exposure to the common risk' such as traffic risks faced by a truck rider deadheading to his rig; and (6) the travel took place as a result of a split shift working schedule, or employment requiring a similar irregular nonfixed working schedule." *Bush v. Parmenter, Forsythe, Rude & Dethmers*, 413 Mich. 444, 452 n.6, 320 N.W.2d 858, 862 n.6 (1982) (citations omitted).

Evidence that an employee ultimately intends to arrive at home does not preclude a finding that he was acting within the scope of his employment, if he intended to make a necessary and work-related stop on the way. For instance, in *Kester v. Mattis, Inc.*, 44 Mich. App. 22, 204 N.W.2d 741 (1972), the Michigan Court of Appeals found that the defendant's employee was acting within the scope of employment where he intended to drop off money from the day's receipts at the gas station where he worked at the home of the station manager, before heading to his own home. 44 Mich. App. at 23-24, 204 N.W.2d at 742.

Moreover, evidence that at the time of an accident the employee "had in his care or custody any of his master's property requiring his attention and oversight" may support a finding that he was acting within the scope of his employment. *Broderick v. Detroit Union R. Station & Depot Co.*, 56 Mich. 261, 268, 22 N.W. 802, 805 (1885). In *Bajdek v. Toren*, 382 Mich. 151, 169 N.W.2d 306 (1969), the Michigan Supreme Court found that a professional photographer was acting within the scope of his employment while driving home from a photo shoot, in part because he had in the trunk of his car camera equipment owned by his employer, which he meant to store for safekeeping at his home overnight and then return to his employer's place of business on his next regular work day. 382 Mich. at 153, 169 N.W.2d at 307. The court concluded that whether the employee "was acting within the scope of his employment [was] a question of fact for the jury," despite countervailing

testimony by the employee that "he was at the time 'all through work', 'was on his own', [and] 'was going home from a job.'" *Id.* at 154, 169 N.W.2d at 308.

In this case, the record evidence suggests two bases for a jury reasonably to conclude that Precision is liable: (1) the essential premise of the general rule is not satisfied, since Gansch may not have been headed directly home; and (2) some of the exceptions to the general rule apply to render the rule inapplicable. That gives rise to several potential fact disputes that must be deemed material.

*First*, contrary to Precision's position, the record does not establish indisputably that Gansch was headed directly to his temporary home when he left his last work site. Certain testimony highlighted by Precision may tend to suggest that Gansch had no other stops, but the fact that Gansch was on the clock at the time of the accident and was paid both an hourly wage and rent for his truck covering the time when the accident happened suggests otherwise. Moreover, both Gansch and Wall testified that they could not recall whether Gansch had any other work-related stops to make before his "eventual" return home. Although lack of recollection is not positive proof, when coupled with the payroll and rental records, a jury reasonably could conclude that the "commuter" rule does not apply because Gansch was not headed directly home at the time of the accident. Otherwise, why would Precision pay Gansch for his time unless he was driving his truck somewhere at its direction and for some work-related purpose? The jury also could conclude that an exception to the rule applies because, even if Gansch was headed home, the trip must have involved some "special mission" in furtherance of his employment.

*Second*, Precision "derived a special benefit from the employee's activity at the time of the injury," because Gansch testified that he had on his truck a number of items of equipment owned

by Precision, which he presumably intended to transport to his home for safekeeping, until they were returned or used the next day. *See Bajdek*, 382 Mich. at 153, 169 N.W.2d at 307; *Broderick*, 56 Mich. at 268, 22 N.W. at 805 (1885).

*Third*, in the alternative, and for the same reason, Gansch's trip from his last job site to his temporary home could have "comprised a dual purpose combining the employment-required business needs with the personal activity of the employee." *Bush*, 413 Mich. at 452 n.6, 320 N.W.2d at 862 n.6.

*Fourth*, Precision "paid for or furnished employee transportation as a part of the contract of employment," *ibid.*, not only by paying hourly rent for the use of Gansch's truck — including payments covering the time when the accident occurred — but also by paying for or supplying fuel, parts, and routine maintenance services during the entire time Gansch used the truck to do work for Precision in Michigan.

Finally, as Spigno correctly points out, this was no ordinary case of a commuting employee making a routine drive in his personal automobile to and from his workplace. Gansch was a licensed commercial truck driver operating a large, heavy vehicle, loaded with tools and equipment. He was hired by Precision and paid both to supply the truck and to drive it to various work sites in Michigan to transport himself as a mechanic and all the tools of his trade wherever they were needed. Precision paid Gansch an hourly wage and rent for the truck covering the time at which the accident occurred. And, as his employment records show, in the weeks leading up to the accident, Precision required that Gansch work up to 13 hours per day, seven days per week, driving his truck between job sites and doing mechanical work, from the early morning, sometimes until late in the evening. His employment by Precision therefore subjected Gansch — and other motorists such as the plaintiff

— to an "excessive exposure to the common risk," resulting from a demanding work schedule and the long hours that Gansch was paid to work and drive.

Too many fact questions stand as obstacles to a judgment as a matter of law on this theory of liability.

### III.

The defendant has not carried its burden of establishing that there are no genuine issues of material fact. Precision is not entitled to summary judgment.

Accordingly, it is **ORDERED** that the defendant's motion for summary judgment [dkt. #43] is **DENIED**.

s/David M. Lawson
DAVID M. LAWSON
United States District Judge

Dated: February 9, 2015

---

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on February 9, 2015.

s/Susan Pinkowski
SUSAN PINKOWSKI